## VAN ORMAN and others *vs.* PHELPS.

In June, 1845, commissioners appointed to make partition reported to the court that they- had divided and apportioned between the parties all the lands described in the petition, except a certain portion thereof called the mill property, which could not be divided without great loss, &c. The court confirmed the report, and ordered the partition so made, to stand firm and effectual, and directed a sale of the mill property. In September, the commissioners reported a sale of the mill property, and their report of sale was confirmed. The record of the proceedings in partition was then signed and filed. In July, 1845, intermediate the order of the court confirming the report of partition, and the filing of the record of the proceedings, the defendants entered upon the portion of the premises assigned to L., one of the parties, by his directions, and carried away the hay which had grown thereon while in his possession; *Held* that the judgment of the court was complete, so far as the actual partition of the premises was concerned, in June, and vested in L., the moment it was rendered, the title to the premises assigned to him, with the grass then standing and growing thereon; and that it afforded a valid justification to the defendants in taking the hay, as the servants of L., although the judgment record was not signed and filed until after the taking occurred.

A record of judgment, although an authentic history of the proceedings and judgment in the suit, and the highest kind of evidence, and in general conclusive evidence of the judgment, yet it is *evidence only.* It is the fact proved by it, which is to have effect. *Per* WELLES, J.

In an action for trespass upon land, the fact that a judgment record which is the evidence of the title under which the defendants justify, was not signed and filed until after the committing of the alledged trespass, is immaterial. If it is signed and filed in time to be used at the trial, it is sufficient.

The sections of the revised statutes which declare that no judgment shall be deemed valid, or affect any lands, &c. or have any preference, as against other judgment creditors, &c. until the record thereof shall have been signed and filed and docketed, were only intended to define and secure the lien of judgments upon land, for the money adjudged to be paid; and do not apply to a case where the proceeding and judgment are *in rem*—as in a partition suit—and where the judgment is like a specific decree in a court of equity.

Where a party presenting a petition to the court, praying for the partition of lands held in common, stated therein that he, together with L. and the other defendants in the partition suit, were possessed of the lands. *as tenants in common,* and such petition was sworn to, and filed, and became a matter of record, and the foundation of the subsequent proceedings; *Held* that the petitioner was *estopped* by the record from afterwards denying that L. was a tenant in common with him, at the time of filing the petition.

Van Orman v. Phelps.

ERROR from the late court of common pleas of Steuben county. The defendant in error, who was the plaintiff in the court below, declared against the defendants in that court, in trespass, for taking and carrying away twelve tons of hay of the plaintiff, &c. The defendants pleaded not guilty, and gave notice of special matter.

At the trial in the court below, in May, 1846, the plaintiff gave the following evidence of the trespass. A witness testified that in the summer of 1845, in haying time, the plaintiff cut the hay in question upon premises then occupied by him, and that before he had gathered it, the defendants came on with teams and a number of hands, and drew it away. The defendants then introduced in evidence a record of a judgment in partition, in the court of common pleas of said county of Steuben, between the plaintiff Phelps, as plaintiff, and Robert Land, John C. Hayt, James A. Hayt and Benajah P. Bailey, defendants; from which record it appeared that the said Horace G. Phelps filed his petition for partition at the December term of said court in 1841; that the petition bore date August 28, 1841, and was sworn to on that day by said Phelps; in which petition it was stated that the petitioner (the said Horace G. Phelps) had an estate of inheritance in five-sixteenths of certain lands and premises in the town of Painted Post in the said county of Steuben; that the said Robert Land had a like estate in five-sixteenths of said land and premises; that the said John C. Hayt had a like estate in four-sixteenths of said land and premises; and that the said Benajah P. Bailey had an estate of two-sixteenths of said land and premises, and had agreed to sell his interest to James A. Hayt; and that the lands and tenements were possessed by the said parties as tenants in common. It further appeared by said record that at the said December term of the court in 1841 it was ordered that the said Robert Land and others, the defendants, should appear and plead in said suit, &c.; and that afterwards, at the term of said court held in December, 1844, their default was entered for want of an appearance and answer to the said petition, and commissioners were appointed to make partition of the premises. That at the March term of said court in 1845,

Van Orman v. Phelps.

the commissioners reported that they had divided and apportion-
ed between the said parties all the lands described in the petition
except a certain portion thereof known as the mill property,
which could not be divided without great injury to the parties, &c.
That at a term of said court held on the first Monday of June,
1845, the report of the commissioners was confirmed, and the
court ordered the partition so made to stand firm and effectual;
and a further order was then made for the sale by the commis-
sioners of said mill property, &c.    That at a term of the said
court held on the first Monday of September, 1845, the commis-
sioners reported a sale of the mill property, and the report of
sale was at the same time confirmed; and the record of the said
proceedings in partition was signed and filed on the 9th day of
September, 1845.    The several orders mentioned in the record
in partition were given in evidence.    It was admitted on the
trial that the land on which the hay in question was cut, was part
of that described in the said petition in partition as being held
by the parties in said suit as tenants in common, and was allot-
ted by the commissioners to the said Robert Land, in the division
made and reported to the court at the said March term, 1845,
and confirmed by the court at the next June term.    The defend-
ants then proved that the said Robert Land employed them to
take away the hay in question, and that in doing so they acted
as his servants and under his directions, and that it was taken
in July, 1845.    The defendants then rested.

The plaintiff then proved, among other things, that in 1838 a
parol agreement was entered into between the owners of the
premises of which the said partition was made, dividing the same,
excepting the mill, between them, under which each went into
possession of his part under such division, and occupied the same
in severalty, and enjoyed the proceeds thereof.    The piece where
the hay in question grew was given to the plaintiff below, in this
division, and a piece adjoining, to the said Robert Land.    The
said owners continued so to occupy the premises in severalty
until Benajah P. Bailey sold out his interest to James A. Hayt,
in 1841, and after that they continued to occupy in the same
way.    The arrangement to occupy was for no particular time.

It was to continue as long as they were all suited. It, in fact, continued down to the time of the alledged trespass, in July, 1845.

After the testimony was concluded, the court charged the jury at length. So much of the charge as is material to the questions discussed in giving judgment by this court, appears sufficiently in the opinion of the court. The jury found a verdict for the plaintiff, and judgment was rendered thereon.

*Wm. Irvine,* for the plaintiffs in error.

*Geo. T. Spencer,* for the defendants in error.

*By the Court,* WELLES, J. The court below charged the jury that the proceedings in partition did not become effectual to sever the interests of the tenants in common in the land, until the record in partition was finally made up and filed. That was done on the 9th of Sept. 1845. The judgment in partition upon the report of the commissioners, was rendered at the term of the court of common pleas held on the first Monday in June, 1845. The hay in question was cut and taken in July following. The premises where the hay grew and was cut were set apart, in the report of the commissioners, to Robert Land, under whose directions the hay was taken by the defendants. The report of the commissioners was confirmed by the court, and the partition so made was ordered to stand firm and effectual. The judgment of the court was complete, so far as the actual partition of the premises was concerned, in June, before the hay was severed from the land. The court had expended their power on that subject, and could do nothing further, so far as respected the premises upon which the hay in question was growing at the time. The further proceedings to be had in the partition suit, were for the sale of another portion of the premises held in common, which the commissioners had reported could not be divided without great injury to the interests of the parties. A record of judgment is nothing more than evidence, and is the highest kind, and, in most cases, conclusive evidence of the judgment of the court. It is an authentic history of the proceedings and

Van Orman v. Phelps.

judgment in the suit.  It is, nevertheless, *only* evidence.  It is the fact, or facts which it proves, that is to have effect.  The important fact. in reference to the question under consideration which this record proved, was the judgment in partition, by which, not only the tenancy in common in the premises where the hay grew, was severed and destroyed, but the title in severalty to such premises, as between the parties to the partition suit, was vested in Robert Land.  This judgment was rendered in June, 1845, and gave him the immediate right of entry, and vested in him, *eo instanti* the judgment was rendered, the title to the premises set apart to him, with the grass then standing and growing thereon, which was, until severed therefrom, a part of the freehold.  The statute provides that " upon any report of commissioners being confirmed by the court, judgment shall thereupon be given, that such partition be firm and effectual forever, and such judgment shall be binding and conclusive." (2 *R. S.* 322, § 36.)  That the evidence of the fact was not made perfect until after the alledged trespass had been committed, was immaterial.  If it was perfected in time to be used at the trial, it was sufficient, and the delay in making it up does not lessen or alter its grade or effect.

There is nothing, in my judgment, to shake the soundness of the foregoing view, except certain other provisions of the revised statutes, which are relied upon by the counsel for the defendant in error.  Those provisions are as follows, viz. :  " The clerk of every court of record shall mark upon the back of every record of judgment filed in his office the time of filing the same.  *No judgment shall be deemed valid, so as to authorize any proceedings thereon, until the record thereof shall have been signed and filed.*"  " *No judgment shall affect any lands, tenements, real estate or chattels real, or have any preference, as against other judgment creditors, purchasers or mortgagees, until the record thereof be filed and docketed as herein directed.*" (2 *R. S.* 360, §§ 11, 12.)

These sections, I am inclined to think, were only intended to define and secure the liens of judgments upon land, for the money adjudged to be paid, and do not apply to a case like the present,

where the proceedings and judgment are *in rem*—and where the judgment is like a specific decree in a court of equity. This construction seems to be authorized by the terms of the sections recited, " No judgment shall affect any lands," &c. " as against *other judgment creditors, purchasers or mortgagees, until,*" &c. The plaintiff in the court below can not be regarded, it seems to me, as a judgment creditor, purchaser or mortgagee, within the meaning of the 12th section, It is equally clear that the 11th section does not apply to the present case. No proceedings have been sought to be had upon the judgment in partition in this case—none, certainly, under which the defendants below seek to justify their acts. The defendants' counsel, on the trial, requested the court to charge the jury, that by the proceedings in partition, the land in which the hay grew had become the sole property of Robert Land, and that if the jury believed the defendants were acting as his servants, or by his direction, when they took the hay, the verdict should be in their favor. The court declined so to charge, and decided and charged that the land did not become the sole property of Robert Land until the record in partition was filed, &c. I think the court erred in charging as it did, and in refusing to charge as requested.

There is another ground upon which I think the judgment should be reversed. The parol arrangement between the tenants in common of the land of which the premises in question were a part, was entered into in 1838. It contained no provision for its continuance for any time in particular. Afterwards, and in December, 1841, Phelps, the plaintiff in the court below, presented the petition to the court of common pleas for the partition of the lands held in common, which petition was sworn to by him on the 28th day of. August preceding, in which he stated that he, together with Robert Land and the other defendants in the partition suit, were possessed of the said lands of which partition was sought, *as tenants in common.* This petition was duly filed and became a matter of record, and the foundation of the subsequent proceedings, which resulted in a judgment in partition. In those proceedings the defendant in error was the plain-

tiff and moving party. After that, I hold he was estopped by the record from denying that Robert Land was a tenant in common with him at the time the petition was filed, and until, by the judgment of the court in the same proceeding, the title became vested in Land in severalty. The court was requested so to instruct the jury, but declined, and the counsel excepted.

If Robert Land was a tenant in common with the plaintiff below, of the premises in question, he had the same right to take the hay as the plaintiff, and if the defendants, in taking the hay, acted under the directions of Land, trespass will not lie against them.

I think the judgment of the court of common pleas should be reversed, with costs, and a new trial ordered. As to the right of the plaintiff in error to costs, see *Laws of* 1844, *ch.* 312, § 2; 3 *R. S.* 3d *ed. p.* 709, § 40.

———————— ◆ ————————

CLINTON GENERAL TERM, July, 1850.     *Paige, Willard, and Hand,* Justices.